Brian S. King, Esq.
(*pro hac vice*)
**BRIAN S. KING, P.C.**
420 E South Temple, Ste 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiffs

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.R., and E.R.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>BLUE SHIELD OF CALIFORNIA<br><br>　　　　Defendants. | Case No. 3:22-cv-07707-JD<br><br>Hon. James Donato<br><br>**REQUEST TO PROCEED PSEUDONYMOUSLY** |

　　　Plaintiffs R.R., and E.R., through their undersigned counsel, hereby move the court for an entry of an Order to allow them to proceed pseudonymously in this litigation for the reasons set forth below.

## BACKGROUND

E.R. was adopted from South Korea when he was about 5 months old.[1] His mother was 13 years old when she had him.[2] From a very early age, E.R. became defiant with caregivers, and many refused to watch him due to these behaviors.[3] E.R. underwent neuropsychological testing in the second grade and was diagnosed with ADHD.[4] He began meeting with a psychiatrist and was given a 504 plan at school.[5]

E.R. began to received detentions and suspensions, threw tantrums, and got into fights at school.[6] E.R. attempted programs such as Cub Scouts but his behaviors were too disruptive and so he left the program.[7] E.R. started homeschooling, he also developed an unhealthy obsession with fire and would do things like burn ants by igniting the stream on a spray paint can. R.R. had to lock up any incendiary materials.[8]

On one occasion while he was watched by grandparents, he shoved his grandfather out of the way and ran into the street, refusing to come back for anyone but his parents.[9]

E.R. rebelled against homeschool and wanted to go to a "regular school," and began attending a facility with one-on-one instruction, but was manipulative and often refused to do schoolwork.[10]

---

[1] See ECF Doc. No. 2, ¶ 10.
[2] id
[3] *Id*. at ¶ 11.
[4] *Id*.
[5] *Id*.
[6] *Id*. at ¶ 12
[7] *Id*.
[8] *Id*. at ¶ 13
[9] *Id*. at ¶ 14
[10] *Id*. at ¶ 15

At times, E.R. became so aggressive that his mother would have to lock herself in her bedroom to remain safe.[11] Once E.R. had calmed down, he would act like nothing happened.[12]

E.R. would destroy property such as breaking holes in doors and walls or smashing things with a sledgehammer.[13] He would throw things, set them on fire, and attempt to physically intimidate his mother and the dog.[14] E.R., also was caught stealing a laptop from school.[15]

During a ski-trip with family, E.R. had a psychotic episode and became paranoid that intruders were out to get him and began fashioning weapons to keep the intruders away.[16]

E.R. started seeing a new psychiatrist, but his behaviors continued to escalate[17]. He was cruel to his friends, participated in Neo Nazi chat groups, and planned fights.[18]

E.R. began experiencing visual hallucinations and seeing figures who were not actually there.[19]

E.R. was homeschooled again but continued his previous behaviors of destroying property and threatening his family whenever boundaries were set[20]. E.R. would deliberately destroy items that were important to a family member he was trying to intimidate.[21]

E.R. again changed psychiatrists and was additionally diagnosed with anxiety and oppositional defiant disorder.[22]

---

[11] *Id*. at ¶ 16
[12] *Id*.
[13] *Id*. at ¶ 17
[14] *Id*.
[15] *Id*.
[16] *Id*. at ¶ 18
[17] *Id*. at ¶ 19
[18] *Id*.
[19] *Id*. at ¶ 20
[20] *Id*. at ¶ 21
[21] *Id*.
[22] *Id*. at ¶ 22

In January of 2018, E.R. was taken to the psychiatric ward after barricading himself in his room, self-harming with a piece of broken glass, and threatening to burn the house down.[23]

A few months later in March of 2018, a SWAT team was called out after E.R. again barricaded himself in his room, this time with a block of kitchen knives.[24]

E.R. received medical hospitalization for five days, after which he briefly began attending a partial hospitalization program but refused to participate after only a few days.[25] E.R. then began receiving residential treatment care followed by intensive outpatient services.[26] There interventions were not successful.[27]

E.R. continued to be physically aggressive and continued to experience visual hallucinations.[28] E.R. also began hearing auditory hallucinations directing him to harm others.[29] E.R. was placed on Home and Hospital care. [30]

E.R. was additionally diagnosed with schizoaffective disorder: bipolar type[31]. E.R. continued to threaten his family and was again hospitalized on January 10, 2020 after he threatened his therapist with physical violence. [32]

---

[23] *Id.* at ¶ 23
[24] *Id.* at ¶ 24
[25] *Id.* at ¶25
[26] *Id.*
[27] *Id.*
[28] *Id.* at ¶ 26
[29] *Id.*
[30] *Id.*
[31] *Id.* at ¶ 27
[32] *Id.*

E.R. received medical care and treatment at Innercept from February 13, 2020, to May 4, 2021.[33] Innercept is a treatment facility located in Idaho, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems. [34]

In a letter dated March 30, 2020, J. Kirk Hartman M.D. wrote in part: [35]

> I have worked collaboratively over the years with his therapist Barton Lynch and even referred him for a second opinion to Kiki Chang who is one of the top pediatric psychiatrists in the nation. [E.R.] has been on some of the most potent psychiatric medication combinations that modern medicine can offer, as well as engaged in quite literally every level of therapeutic setting: [sic] a previous partial hospitalization program (PHP) (2018), previous residential treatment program (2018), and multiple psychiatric hospitalizations (2018 & 2020). Despite these intensive interventions, [E.R.] continued to struggle with agitated, aggressive, and impulsive behavior that is often threatening toward his family. Therefore, I strongly recommend [E.R.] enter residential care. It has been the consensus of his entire treatment team that [E.R.] required longer term, residential treatment.

E.R. received health benefits from his father R.R.'s employee welfare benefits plan, the Fehr & Peers Full PPO savings two-tier embedded plan ("the Plan"). Through Blue Shield of California (BSC).[36] BSC, however, denied payment for the entirety of J.S.'s treatment at Innercept.[37] After unsuccessfully internally appealing, R.R., and E.R. filed suit against BSC in federal court, raising two claims for relief: first, a claim for recovery of benefits under the

---

[33] *Id*. at ¶ 4
[34] *Id*.
[35] *Id*. at ¶ 36
[36] *Id*. at ¶ 3
[37] *Id*. at ¶ 5

Employee Retirement Income Security Act ("ERISA"); and second, a claim that Defendants violated the Mental Health Parity and Addiction Equity Act ("MHPAEA").[38]

The case was originally filed in the District of Utah, and transferred to this District by joint stipulation of the parties.[39] The parties agreed to dismiss plaintiffs' second cause of action, brought under the Mental Health Parity and Addiction Equity Act, 29 U.S.C. § 1132(a)(3).[40] Plaintiffs have moved for summary judgment on the remaining count.[41] Blue Shield filed a combined reply and cross-motion for summary judgment.[42] The Court granted the Defendant's motion for summary judgment and denied Plaintiffs motion for summary judgment.[43] Plaintiffs were ordered to file a statement identifying themselves, or a request to proceed pseudonymously that complies with the governing standards by September 6, 2024.[44]

## ARGUMENT

### A. The Court Should Allow Plaintiffs to Proceed Pseudonymously

The presumptive rule under the Federal Rules of Civil Procedure is that the identities of the parties are included on the pleadings.[45] However, Federal Rule of Civil Procedure 5.2(a)(3) requires litigants to protect the identity of minors by, at minimum, only using the minor in question's initials when filing their pleading. Moreover, "in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym."[46] The Fourth Circuit has

---

[38] *Id*. at ¶ 9
[39] See ECF 21 and 22
[40] See ECF 47
[41] See ECF 53
[42] See ECF 57
[43] See ECF 61
[44] *Id*.
[45] *See* Fed. R. Civ. P. 10(a).
[46] *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014).

identified several nonexclusive factors that District Courts should consider in evaluating a motion to proceed anonymously:

> [W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is **to preserve privacy in a matter of sensitive and highly personal nature**; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; **the ages of the persons whose privacy interests are sought to be protected**; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.[47]

"Not all of these factors may be relevant to a given case, and there may be others that are."[48]

The *James* factors weigh heavily in favor of allowing R.R. and E.R. to proceed anonymously here. A minor with mental health issues should not be forced to disclose his most intimate and private medical details simply because an insurance company denied his coverage for treatment for these medical issues in violation of federal law.

As to the first factor, R.R. and E.R. are not merely trying to avoid the annoyance and criticism that might come from litigation; rather, E.R. is a young adult whose records of struggling with severe mental health struggles are highly personal—and protected from public disclosure by HIPAA. Courts thus routinely allow parties to proceed anonymously or pseudonymously in cases involving sensitive medical issues.[49] Moreover, if the details of this

---

[47] *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (emphasis added); *see also* Fed. R. Civ. P. 26(c) (the Court has broad authority for "good cause" to "issue an order to protect a party or person from annoyance [or] embarrassment.").
[48] *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016).
[49] *See, e.g., K.H.B. v. UnitedHealthcare Ins. Co.*, 2018 U.S. Dist. LEXIS 144690, at *2 (N.D. Cal. Aug. 24, 2018) (permitting plaintiffs to proceed under pseudonyms in an ERISA action challenging the denial of mental health care benefits); *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (granting the plaintiff's motion to file pseudonymously, reasoning that public disclosure would deter civil litigants with mental conditions from "ever reaching the courthouse steps [to vindicate their rights] for fear of repercussions that would ensue if their condition was made public").

case are publicly linked to E.R., it could cause her even more trauma, and negatively affect her personal and professional future. This factor strongly weighs in favor of permitting Plaintiffs to proceed anonymously.

While the second factor enumerated in *James* is not implicated by this case, the third factor—the ages of the persons whose privacy interests are sought to be protected—weighs heavily in favor of allowing E.R., to proceed anonymously.[50] E.R. was a minor at the time he received the mental health care at issue in this case. In California, juvenile records—including juveniles' names— are not available to the public.[51]

Courts have consequently recognized that juveniles' names should not be publicly disclosed—even after the juveniles have attained majority—when the facts underlying a lawsuit involved them as a minor. For example, the Middle District Court of North Carolina recently ruled that the plaintiff could proceed anonymously when the minor reached the age of majority after the case was filed.[52]

Likewise, in *T.S.H. v. Northwest Missouri State University*, the plaintiffs alleged that their rights were violated when the defendants disclosed their identities in an investigation into voyeurism when the plaintiffs were juveniles.[53] The court granted the plaintiffs' request to maintain the lawsuit under their initials, even though they were by then adults; it observed that

---

[50] *James*, 6 F.3d at 238.
[51] *See* California rules of Court Rule 5.552: Confidentiality of records §§ 827, 827.12, 828
[52] *See Order and Recommendation of United States Magistrate Judge*, *N.E. v. Blue Cross Blue Shield of North Carolina and Carson Dellosa Publishing, LLC*, case no. 1:21-cv-00684, ECF No. 47 at 33-34 (M.D. N.C. Feb. 24, 2023) and *Order Accepting Recommendation of United States Magistrate Judge*; ECF Doc. 51 (M.D. N.C. Mar. 29, 2023).
[53] *T.S.H. v. Northwest Mo. State Univ.*, 2019 U.S. Dist. LEXIS 174372, *3-7, 2019 WL 5057586 (W.D. Mo. 2019).

"revealing Plaintiffs' identities in this lawsuit would defeat the protections afforded to their juvenile records."[54]

So too here. Any public interest in E.R..'s identity is heavily outweighed by E.R.'s privacy interest.

In addition, disclosing R.R.'s identity will likewise disclose E.R.'s identity, thereby destroying the safeguard of anonymity that must be provided to E.R. pursuant to *James*.[55] Plaintiff R.R. is E.R..'s father, and if R.R. proceeded using his full name, any individual could easily identify E.R. and would therefore be privy to the intimate details of E.R.'s past history, mental health struggles, self-harm, suicide ideation, and subsequent period of inpatient treatment. Such an intimate invasion of privacy caused simply by the fact of the father maintaining insurance coverage for her minor child and the insurance company denying covered treatment would be untenable.[56]

The final factors, which instruct the court to evaluate the potential harm to Defendants, also favor allowing R.R. and E.R. to proceed pseudonymously. Defendants suffer no prejudice from the use of initials in the publicly filed documents, as they control and maintain the entire claim file and have full knowledge and information about who both plaintiffs are. Moreover, HIPAA requires them to protect this medical information.

---

[54] *Id*. at *6. *See also Nelson v. Green*, 2007 U.S. Dist. LEXIS 23125, *5, 2007 WL 984127 (W.D. Va. 2007) (permitting plaintiff suing county social services department to use pseudonym and refer to wife and child by pseudonym).

[55] *Doe v. United States*, 2017 U.S. Dist. LEXIS 234261, at *3 (M.D.N.C. Sep. 12, 2017) ("With respect to the minor Plaintiffs, Fed. R. Civ. P. 5.2(a)(3) requires that only a minor's initials be used in a court filing. To identify initials of the minors and the full name of any guardian appointed would appear to defeat the purpose of Rule 5.2.").

[56] *See, e.g., Doe v. Richland Cty. Sch. Dist. Two*, 2020 U.S. Dist. LEXIS 39414, at *6 n.3 (D.S.C. Mar. 5, 2020) (allowing the minor plaintiff's mother to proceed anonymously as "Mother Doe" because if the identity of Mother Doe is revealed, the identity of her minor daughter will also be revealed).

Another factor not mentioned in *James* bears discussion as well. The public's right to know about, and learn from, the litigation is protected by permitting Plaintiffs to proceed anonymously. By proceeding anonymously, Plaintiffs can publicly disclose the underlying facts of the case. Indeed, they filed their Complaint without redacting the facts. The public, consequently, "will retain access to all aspects of this case except for the identity of the plaintiff."[57] And "denying public access only to E.R.'s identity is narrowly tailored to balance the right of access with E.R.'s strong privacy interest."[58]

In short, the relevant factors strongly weigh in favor that Plaintiffs R.R. and E.R. be permitted to proceed pseudonymously.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that the Court enter an order granting Plaintiffs permission to proceed anonymously in this litigation, as pled, specifically permitting R.R. and E.R. to proceed under their initials.

DATED this 6th day of September 2024

                                                  BRIAN S. KING, P.C.

                                                  BY: /s/ Brian s. King
                                                        Brian S. King, *admitted pro hac vice*
                                                        Attorney for Plaintiff
                                                        420 E. South Temple, Ste 420
                                                        Salt Lake City, UT 84111

---

[57] *Doe v. Catholic Relief Servs.*, 2020 U.S. Dist. LEXIS 142069, *5, 2020 WL 4582711 (D. Md. 2020) (allowing plaintiff who sued for wrongful termination of health insurance to same-sex spouse to proceed anonymously). Of course, because E.R.'s HIPAA-protected medical records make up the prelitigation record, as is customary, the parties will move to file the prelitigation record under seal.

[58] *Id.*

        Telephone: (801) 532-1739
        Facsimile: (801) 532-1936
        Brian@briansking.com

        David M. Lilienstein, SBN 218923
        david@dllawgroup.com
        Katie J. Spielman, SBN 252209
        katie@dllawgroup.com
        **DL LAW GROUP**
        345 Franklin St.
        San Francisco, CA 94102
        Telephone: (415) 678-5050
        Facsimile: (415) 358-8484

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been sent to all parties registered to receive court notices via the Court's CM/ECF system.

DATED this 6th day of September 2024

        /s/ Brian S. King